Mr. Blink, don't get too comfortable May it please the court, I'm Davis Blink appearing on behalf of the appellant Carleton Harris. The district court erred in finding that there was no genuine issue of material fact with respect to whether I'm sorry. I'm sorry. Procedurally this case is a bit confusing. I look through the docket and it looks like it was a joint motion to dismiss the Superior Court. Now why would Harris agree to dismiss the entity that he admits was his direct employer? Why not at the very least sue both entities? Because Mr. Harris also contends that the county was his employer and the Superior Court cannot be liable under the 11th Amendment. Look, why didn't you sue the chief judge? You seem to know that you had to sue the commissioners of the county board instead of the county, but why not do with the same with the court? Because what am I missing? What am I missing? With respect to the court or with respect to suing the judges in their official capacities, the remedies that you're able to get is limited. Well look, I mean when the court is acting in an administrative capacity, I think this is not the first case where a court has been challenged for something. So if the chief judge were to say henceforth the court is going to hire only white people to be judicial assistants, the chief judge could be sued for that. That's a blatant violation of the Constitution, which applies to all of us. And so Mr. Harris has a case that he would like to bring against his employer, but his with that much, you can go on and explain to us how, you know, what your best case is for a contested characterization of the county board, not just as the mechanical issuer of checks and carrier out of orders from the court, which is how they portray themselves, but what is it that makes them in enough control over Mr. Harris's job, enough control over his employment status, to make him a joint employer? Yes, Your Honor, under this court's precedent in JP Love versus Collin and Sons and Tamayo versus Blagojevich and Heinmeier, you need, when you're contending that an indirect employer is your employer, for purposes of federal anti-discrimination statutes, you need two things. First, you need evidence creating a genuine issue material fact. And that's what I'm asking you to tell me, because, you know, we have Murphy and your opponents say she was just a mouthpiece. They actually literally use that word. She's just conveying the messages back and forth about what's happening. We have this somewhat ambiguous statement, hearsay, but who says she didn't know that Harris, Harris reports that she didn't know he'd been terminated and that she said that downtown, meaning the county, handles that. That strikes me as a pretty thin reed to say that, to say that there was this joint employer relationship. Okay. Yes, Your Honor, there's, the fact is that Ms. Murphy testified in her deposition that she spoke to Ms. Reichert and that Ms. Reichert told her that Mr. Harris could not be accommodated and that he had to be terminated. And so she says she was just acting as a liaison. Ms. Reichert did submit an affidavit and she didn't say that. But all she said in her affidavit was that she was authenticating records. I didn't read this as an affidavit that was helping me one way or the other with respect to Ms. Reichert's role. She certainly, you're right, she doesn't say that she did do any particular thing, but she also doesn't say that she didn't. She's just authenticated. So then what we're left with, Your Honor, is the letter sent from Charity Murphy on county letterhead, telling Mr. Harris that he can't be accommodated and that he's going to be terminated. And does that make her a decision, is that enough evidence to show that either she or the county is a decision maker with respect to that issue? Well, there's nobody else that Mr. Harris dealt with during this period of time regarding his accommodations and returning to work than Ms. Murphy. Ms. Murphy... So I agree with you. This was very opaque and there's lots of use of the third person plural. They did this or somebody did that. I mean, no one is pinning responsibility down other than perhaps to the court. Ms. Murphy, Your Honor, told Mr. Harris that your disability prevents you from returning to work and you are not qualified for any other jobs. He had applied for other jobs and she told him you're not qualified for those and she also offered him... But is that enough evidence? Because I really mean this, I intend to ask the same question of the county. Is that enough evidence to say that she was the one who made that decision? Or are we to take that as the county suggests that she's just passing along what she's been told? It's enough to create a genuine issue of material fact. And that's the important point here, is we were cut off at the knees and not allowed to take... Well, counsel, isn't it true, for example, in throughout the state of Indiana, the employees of the judge are paid by the county? That's true, Your Honor, and that the fact of who he was paid by... The only person in the court system that's paid by the state's the judge. Yes, and that's not a major factor that we're relying on to establish the control, what you need under... So the fact that he's paid by the county, but that gets rid of a lot of your argument because you point to quite a few things that... Like letterhead that has the county seal on it, but given what Judge Kaney's talking about, is that probative? Well, the letterhead, what I think you're referring to there is his job description, Your Honor, and that doesn't have anything to do with payment. That's his job description, and it's a county job description. And so that indicates that the county is establishing the duties... But the judge, he's a judicial employee, right? Right, but the job description is a county job description. Well, I... Is Harris claiming that even if the county was not actually his employer, Ms. Murphy lulled him into thinking it was? No, no. Mr. Harris is alleging that the county is an indirect employer under Cullen, Tamayo, and Heinmeier, because there's evidence from which an inference can be drawn that it, through its... Ms. Murphy, who is, after all, the ADA coordinator, at least participated in this decision. She's the only one, if there's any evidence, that did at all. And in addition to that... I'm sorry. I'm sorry. No, I didn't mean to interrupt you. Go ahead. I was just gonna say... No, no, I... Yeah. In addition to that, there's evidence that the county exercised control over hiring and firing by the fact that Ms. Murphy offered Mr. Harris a job in the judicial department and told him that he was not qualified for the other jobs that he had applied for. And I see I only have one minute left. You are in your rebuttal time, if you would like to... Yes, I would like to reserve the remaining of my time. All right. Thank you. Ms. Mazur. Good morning. Laura Mazur on behalf of the Applee Allen County, Indiana Board of Commissioners. So here's what worries me about the county's position. It certainly is possible that there be joint employers, and what I'm trying to decide is whether there are enough disputed issues of disarrangement, whether it's the statements Ms. Murphy made, whether it's who creates the job description, who decides what duties will be performed by these youth care workers, youth care specialists. Have they moved the ball over the line at least enough to get to the next step or not? The county would contend that, no, they have not moved the ball into the field of control over any of the duties. First off, statute prescribes that these employees are employees of the court. The statute prescribes that the judge... Why isn't that sufficient? Was this statute directed toward Allen County only, or at least fed Allen County? There are two statutes at issue. One is for the judiciary in general and discusses the creation of a juvenile center and states that employees of a juvenile center work at the pleasure of the court. There is a separate statute that deals with Allen County, and it goes on to say that, for example, if there's no prescribed means of setting the salary, then the court shall set the salary and it shall be paid from the budget. There are a few... Are there no limit? If the court decided, we've been on a survival budget long enough, and so we're going to pay our youth care specialists $200,000 a year because it's a tough job and they need more money. The county just mechanically pays that? I believe there's a mechanism whereby the county council, which is actually responsible for the budget... They come to a mandate, it goes back to the judge and the judgment. It would go to a mandate, yes. I believe that the county council could say, no, your honors, that's not a reasonable rate for these positions, in which case the court could... Then it goes to litigation. The court could mandate and it would go to litigation. So who are the parties to this litigation? The parties to this litigation are Mr. Harris and... No, no, no. If there were the kind of situation I'm talking about, it would be the person who's going to get the pay versus the court. The county versus the court? I think it would be the county or the court versus the county council. So if the court decided, we've decided to build a new courthouse, the county might say, we don't think we have enough money for that? I'm just trying to figure out, what are the controls the county has over what the court says? Is it just the court's word, period, full stop? Or are there meaningful controls such that Mr. Harris, in his case, might have... He certainly doesn't dispute that he works for the court, but the only question is, does the county have enough of a say in these things to make it a joint employer? I think the county has very little say. In the scenario that we've been discussing, if there is some extraordinary fiscal issue, then the budgets are set by the court, and I believe the county council and not the county board of commissioners could object to what is called a budgetary assessment, in which case a mandate would occur or could be issued, and those parties would go to court. But the board of commissioners, in fact, really no county entity has control over what goes on at the court's youth center or juvenile center in Allen County, other than the court. The court sets the duties. The brief included in the appendix, in my appendix, the handbook. It's clear that the court intends to govern all facets of the employment of its people. The handbook had provisions... I find it quite troubling, actually, that neither Chandra Rueckart nor Judge Heath identified who made the decisions, that it was not possible to accommodate Mr. Harris, and that he would have to be terminated. The affidavits are suspiciously silent about this. Can you enlighten us? I can enlighten you to a degree on that, Your Honor. The parties in litigation, when this case was filed, it was filed as against the Allen Superior Court and the Allen County Board of Commissioners. Those are two separate entities, and they were represented by two separate attorneys. I represent the county. When the county decided to file a summary judgment on the issue of who is the proper employer and on the issue that it is not the proper employer, the Superior Court was still in the case. It had not yet been dismissed from the case. And so my belief is that the county... I don't want to rush into a lot of the facts of the case. And so those individuals are not my clients. When drafting affidavits for the summary judgment, Judge Heath did very unequivocally say that it is the court that determines who is hired, who is fired, and that it has not delegated those duties to the county or to Ms. Murphy. And he said, in fact, that in this case, the court may... Ms. Murphy made the decision to either hire or to terminate the employment of Carlton Harris. So there is that. But I think the reason that those affidavits were somewhat scant is that they were not fully parties with regard to the issue on summary judgment, because it was a summary judgment filed by the co-defendant county and not the court. I think that... Oh, I'm sorry. When the parties agreed to file in the district court a joint motion to dismiss the Superior Court because of an 11th Amendment issue, was there any discussion of whether Harris could name the chief judge or the judge in charge of the Juvenile Center to avoid 11th Amendment immunity? Not to my knowledge, but Your Honor, I wasn't very terribly involved in the discussions between Mr. Harris's counsel and the counsel for the court at that time. So I'm not sure what the thought process was there, but the two agreed that the court would be dismissed, and I certainly didn't object to that. I think what's important here is the issue of control, which this court has stated is the most important indicia for determining who the proper employer is. And in this case, it's much like the case that the appellant brought before the court, Love versus Cullen. In Love the claim was that the employee of a subcontractor be removed from a construction project, and the employee later sued both Cullen, the general contractor, and I assume it's... Although I can't recall right now the actual employer, but the claim against the general contractor was that you influenced the actual employer to fire me, and therefore you had control over my employment, over the hiring and firing, and you should be the employer. And this court said no, that Cullen in that instance did not have adequate control over the situation, that Cullen did not have the ability to hire and to fire the employees of the subcontractor. So even though that general contractor had influenced the decision of the direct employer to remove the person, this court said that no, that he did not have enough control. In this case, the Board of Commissioners has very, very little control. Charity Murphy was involved in administering workers' compensation matters, but she did not... And the ADA coordinator, right? She's the ADA coordinator, which involves both ADA accessibility issues and issues such as this, where she's trying to reduce county liability should any of the employees who are paid out of county funds allege something like this. But she was taking her instructions from the court. It's clear from the evidence that was submitted in this case that she spoke to Chandra Reichert. Chandra Reichert said, with these restrictions, Mr. Harris can't perform the functions of his job. And then Ms. Murphy relayed that back to Mr. Harris. Likewise, with regard to offers of employment coming out of the court, because Charity Murphy was involved at that point, because workers' compensation had not yet been... That case had not yet been concluded, she was the one telling Mr. Harris that the court could offer him whatever the wage was for a job, and he declined. But there was no actual control over the situation. I see my time is up. Thank you, Your Honors. Thank you very much. Anything further, Mr. Flink? Yes. I think this goes to Judge Rovner's question at the beginning. I just would like to point out that the state of the record is that Chandra Reichert, it is an undisputed fact, said that she did not know that Mr. Harris had been terminated. Ms. Murphy says that Chandra Reichert directed her to terminate him because they couldn't be accommodated and it was just acting as a liaison. There's no evidence in the record to dispute the fact that she told Mr. Harris she did not know he had been terminated. Ms. Reichert, in her deposition, said she spoke to... Or Ms. Murphy said she spoke to Ms. Reichert, for sure. She said, I may have spoke to another person, but I can't remember. I asked her, did you speak to anybody else? No, that's it. So based upon that evidence, a reasonable inference can be drawn that Ms. Murphy at least participated in making this decision to terminate Mr. Harris. And it's not clear at all that Ms. Reichert made the decision at all. And that's the important thing. Well, it could have been the judge. I mean, it may have been the judge in charge of these administrative things. It could have been, if I could just answer that question. Please do, yeah. Ms. Reichert didn't say she spoke to him and I asked her in the deposition, did you speak to anybody else other than these two people? And she said no. So the state of the evidence is that it can't be. Thank you, Your Honors. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.